LANDRY, Judge.
This appeal by Lawrence R. Roberts (Appellant) is from the decision of the Civil Service Commission (Commission) ordering Appellant’s dismissal from the classified position of Deputy Fire Marshal II and disqualification for appointment to that position for two years for entering false information on Appellant’s application for the position in violation of La. *453 Const. Art. 14, Section 15, Par. N(4), and the Commission’s Rule 14.1.1(c). We affirm.
La.Const. Art. 14, Section 15(N) (4) provides:
“No person shall make any false statement, certificate, mark, rating or report with regard to any test, certification or appointment made under any provision of this Section, or in any manner commit or attempt to commit any fraud preventing the impartial execution of this Section and the rules.”
The Commission’s Rule 14.1.1(c) states:
“No person shall make any false statement, certificate, mark, rating, form or report with regard to any application, test, certification, personnel transaction, appointment or employment made under any provision of this amendment ..."
By letter dated April 16, 1971, the Commission informed Appellant of its receipt of a report indicating that Appellant had falsified certain information on Appellant’s application for the position of Deputy Fire Marshal II, submitted by Appellant on September 1, 1966. The communication also noted that on the strength of said application, Appellant was employed as Deputy Fire Marshal II on September 16, 1966. The Commission’s letter also notified Appellant that an investigation would be made pursuant to La.Const. Art. 14, Section 15(0) (4) to determine whether Appellant had committed the alleged violation by falsely stating that Appellant was employed as a full time fireman by the Harrison-burg, Louisiana Fire Department from January 1, 1961 to December 31, 1964, which experience was an indispensable prerequisite to Appellant’s employment as Fire Marshal II. In addition, Appellant’s application related that during the aforesaid period of employment, he worked 40 hours weekly as a fireman, and was paid a starting salary of $145.00 monthly which was subsequently raised to $165.00 per month.
Error on the Commission’s part is asserted in the following respects: (1) Failing to hold that the charges against Appellant were prescribed under the provisions of La.Const. Art. 14, Section 15(0) (4) since four years and six months elapsed between the alleged violation and institution of the Commission’s investigation; (2) Not finding that the Commission was estopped by the action of the Commission’s agents who reputedly condoned and acquiesced in the manner in which Appellant answered the interrogatories on the application, and (3) Refusing to permit Appellant opportunity to introduce evidence to establish that Appellant’s dismissal was the result of political intrigue and discrimination.
Except as hereinafter noted, the record contains virtually no dispute as to the facts.
It was established that Harrisonburg, Louisiana, a community of approximately 300 persons, had no paid fire department during the period Appellant related he was employed as a paid fireman by that municipality. The record further shows that during the period in question, Harrisonburg owned an antiquated fire truck which was inoperable from time to time. The community also owned a quantity of surplus, mostly outdated fire fighting equipment. Some 12 to 20 citizens of Harrisonburg comprised the volunteer fire department which met at infrequent intervals. Some of these members received training from time to time, the nature, extent and scope of which is not fully apparent.
Appellant represented himself at the hearing before the Commission. He stated that he was a member of the fire department although he could not remember fighting a single fire, and neither could he recall ever having driven the fire truck on a call. According to Appellant, his principal activity was organizing and attending fish fries sponsored by the volunteer firemen, on which occasions the business of the department and fire fighting methods *454 were discussed. Appellant also acknowledged that while a volunteer fireman, he never conducted a fire inspection of a building. Appellant acknowledged living approximately 20 minutes drive from Har-risonburg, but maintained that he kept in touch with Fire Chief Henderson by means of a shortwave radio which appellant purchased with his own funds. Appellant admitted he received no pay as a fireman, but insisted he spent 40 hours weekly in the activities which he conducted on behalf of the fire department.
Subject application was filled out in blue ink except that dates of employment by the Harrisonburg Fire Department, the hours per week worked, and the salary received were written with black ink. Appellant contended that the data as to dates of employment, compensation and hours worked were not written by him, but by agents of the Commission who advised Appellant that the information entered as to these items “would make the application look good.” Appellant could not, however, recall the name of or identify any of these individuals.
Mr. J. C. Henderson testified that he was chief of the fire department during the period of employment entered on Appellant’s application. He acknowledged that Appellant was a volunteer fireman and that he, Henderson, had executed an affidavit as to Appellant’s service at Appellant’s request. The affidavit, dated December 31, 1964, simply attests to Appellant’s employment by the Harrisonburg Fire Department from January 1, 1961, through December 31, 1964. Henderson acknowledged the affidavit was correct to the extent Appellant was a volunteer fireman during that interval.
Cater Freeman Aplin, Jr., Mayor of Harrisonburg during Appellant’s service as volunteer fireman, stated in effect that although he knew Appellant spent considerable time in Harrisonburg during the interval in question, he did not know whether Appellant served as a volunteer fireman during that period. He also stated that the volunteer firemen met approximately once a week, but that none worked forty hours weekly and none received any compensation whatsoever for services rendered.
The Commission found: (1) Appellant either wrote or was responsible for the disputed information as to Appellant’s service as a fireman, hours worked and pay received; (2) The misrepresentations in question were violative of La.Const. Art. 14, Section 15 (N) (4) and Civil Service Rule 14.1.1(c); (3) Appellant was not employed as a fireman by the Harrisonburg Fire Department from January 1, 1961, to December 31, 1964, nor did Appellant function as a fireman during that period, and (4) Appellant neither worked 40 hours weekly nor was paid any salary as a fireman by Harrisonburg during the interval in question. The Commission also found that the representations in question were deliberately false and were made for the sole purpose of qualifying Appellant for the position of Deputy Fire Marshal II, which required a high school diploma and two years experience in fire prevention work, fire fighting, law enforcement, criminal investigation or insurance loss investigation.
Appellant’s contention that the matter had prescribed because of failure to institute proceedings against him within one year of his submitting the application is without merit.
The record shows that on April 6, 1971, the Commission’s Director reported Appellant’s alleged violation to the Commission which then set an investigation for May 1, 1971. Hereinabove quoted Section 15(0) (4) places no time limit in which the Commission may instigate an investigation of an alleged violation of the Civil Service Amendment on its own initiative. That provision of Section 15(0) (4), above, which recites that the Commission “shall upon the filing of written charges by any person of such a violation within-one year after the alleged violation, investigate such charges”, merely makes it the *455 mandatory duty of the Commission to investigate where the charge of violation is made by one other than the Commission within a year of the alleged infraction. The obvious correlative of the requirement is that where the charge is made by an individual more than a year following the alleged violation, the Commission may investigate, but is not mandatorily required to do so. This does not mean, however, that the ability of the Commission to investigate on its own initiative is any way restricted. The plain import of the applicable section is that the Commission may investigate at any time, on its own or otherwise.
Assuming that the Commission itself could, under extreme circumstances, be guilty of laches barring it from initiating an investigation on its own, no such showing is made in the case at bar. It is not shown that the Commission itself had knowledge of the infraction and refrained from taking any action thereon, thus lulling Appellant into a sense of false security on the premise that wrongdoing on his part, to the knowledge of the Commission, has been condoned. On the contrary, the record discloses that when knowledge of the infraction came to the Commission’s attention, the Commission acted forthwith as it had the clear right to do.
The record is devoid of proof that the Commission, through its agents, condoned and acquiesced in the manner in which Appellant submitted his application. Appellant could neither name nor describe the Civil Service employee who allegedly assisted him in preparing his application. Moreover, Appellant could not recall having been interviewed or interrogated when he submitted his application although he felt sure he had been interviewed. Additionally, even if such conduct on the part of the Commission’s employee were established, it would not bar or estop the board from taking disciplinary action thereon. See Cormier v. Board of Institutions, State Department of Institutions, La.App., 230 So.2d 307.
There remains the issue of alleged political discrimination. In the course of his testimony, Appellant stated that a person had vowed to see Appellant discharged from his position and had been working hard toward that end. To this, the Chairman of the Commission responded:
“This is a very obscure reference—all we know about this is what we’ve heard from right there, and if you have some testimony which you wish to give yourself in this regard, you have a right to do that.”
To the foregoing, Appellant responded: “No sir, I haven’t.” The Chairman then advised Appellant as follows:
“If you have some allegation to make about somebody doing you in unjustifiably, you have a right to take the stand and put on such evidence as you feel appropriate. I don’t know who you’re talking about or what the nature of it is. You’ve heard everything that the 3 of us know about it. You know a lot about it but we don’t know anything about it except what’s been said in front of us today. If you have some further evidence that you wish to give us that bears on the question of this application and your qualifications for the job, we’d be glad to hear it.”
Appellant then indicated he had nothing further to offer. In view of the foregoing, we find no merit in the argument that the Commission arbitrarily declined Appellant opportunity to establish his allegation of political discrimination. On the contrary, it appears Appellant declined to take advantage of the Commission’s offer in this respect.
The decision of the Commission is affirmed at Appellant’s cost.
Affirmed.